UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES C. MOTTLEY,

        **Plaintiff,**                             **Case No. 2:07-cv-384**
                                                   **JUDGE GREGORY L. FROST**
        **v.**                                **Magistrate Judge Terence P. Kemp**

MELISSA K. SPILLAN dba
DAFCAN FINANCE, INC., et al.,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's motion for summary

judgment (Doc. # 26), Defendants' memorandum in opposition (Doc. #31), and Plaintiff's reply

memorandum (Doc. # 32).  For the reasons that follow, the Court finds the motion not well

taken.

### I.  Background

This matter arises from a September 2006 loan agreement between Plaintiff, Charles C.

Mottley, and Defendant Triangle Equities, Inc., which does business as Dafcan Finance, Inc.

(collectively, "Dafcan").  Under the terms of the agreement, Dafcan was to loan Mottley

$1,314,000.  As collateral for the loan, Mottley conveyed to Dafcan 1,500,000 shares of El

Capitan Precious Metals, Inc. stock, which was to be returned to Mottley upon repayment of the

loan.  It is undisputed that Dafcan never funded the loan, however.  Dafcan eventually returned

763,200 shares of  El Capitan Precious Metals, Inc. stock to Mottley.

On May 1, 2007, Mottley filed suit against Defendants Dafcan and Melissa Spillan,

Dafcan's president who signed the loan agreement on behalf of the company.  (Doc. # 2.)  He

later filed an amended complaint on June 21, 2007, which asserts four counts: breach of contract, conversion, unjust enrichment, and negligent misrepresentation.  (Doc. # 9 ¶¶ 14-30.)  Mottley has moved for summary judgment on his claims for breach of contract, conversion, and unjust enrichment.  (Doc. # 26.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

The crux of Mottley's motion for summary judgment is that it is undisputed that Defendants never returned to him 736,800 shares of El Capitan Precious Metals, Inc. stock.  In support of this factual assertion, he has presented this Court with his own affidavit that indicates he neither received the remaining portion of his stock or compensation for the value of the unreturned shares.  (Doc. # 26-2, Mottley Aff. ¶¶ 5-6.)  Mottley has also filed an affidavit from David W. Corcoran, an employee of Trading Direct (Defendants' brokerage company), in which Corcoran states that contrary to the representations made in Defendants' Answer, the 736,800 shares were never transferred from Defendants' brokerage account to the brokerage house for subsequent transfer to Mottley's account.  (Doc. # 26-3, Corcoran Aff. ¶¶ 4-6.)  In short, Mottley has presented evidence that he indeed has never received the 736,800 shares of stock.

Defendants oppose summary judgment on the grounds that the parties entered into a September 2006 settlement agreement in which Defendants were not required to return the remaining stock to Mottley but were instead required to make two installment payments.  To support the existence of this purported settlement agreement, Defendants have offered an affidavit from Melissa Spillan in which she attests to the foregoing.  (Doc. # 31, Spillan Aff. ¶¶ 4-6.)  Defendants point to this evidence as creating a genuine issue of material fact precluding summary judgment.

Mottley contests Defendants' argument on the grounds that the parties never reached a settlement.  Additionally, Mottley argues that this Court should strike Defendants' memorandum

in opposition because it relies for support on confidential settlement negotiations that fall within

the scope of Federal Rule of Evidence 408.  Rule 408(a) provides:

> Evidence of the following is not admissible on behalf of any party, when offered
> to prove liability for, invalidity of, or amount of a claim that was disputed as to
> validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> > **(1)** furnishing or offering or promising to furnish--or accepting or
> > offering or promising to accept--a valuable consideration in compromising
> > or attempting to compromise the claim; and
> >
> > **(2)** conduct or statements made in compromise negotiations
> > regarding the claim, except when offered in a criminal case and the
> > negotiations related to a claim by a public office or agency in the exercise
> > of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a).  The rule also provides that it "does not require exclusion if the evidence is

offered for purposes not prohibited by subdivision (a).  Examples of permissible purposes

include proving a witness's bias or prejudice; negating a contention of undue delay; and proving

an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408(b).

Ironically, while arguing that the foregoing rule precludes evidence of any purported

settlement between the parties in this litigation, Mottley has attached to his reply memorandum

numerous communications between counsel meant to reveal settlement negotiations but no final

settlement.  To excuse offering this material, Mottley explains that he "comes forth with [the]

evidence of the settlement negotiations only in response to Defendants' argument, in which

Defendant [*sic*] brings into issue the nature of the settlement talks."  (Doc. # 32, at 3 n.1.)

Mottley fails to explain where or how Rule 408 provides such a "they opened the door"

exception to its preclusive scope.

The issues before this Court are therefore whether the Court can look at the settlement

negotiation material, whether Rule 408 precludes recognizing the fact of a settlement, and

whether the purported settlement here presents an issue of fact precluding summary judgment. The Court answers these questions in the following manner: it does not matter, no, and yes, respectively.

At first blush, Rule 408 would appear to prohibit recognition of the settlement agreement that Defendants assert exists.  This Court agrees with Mottley that Rule 408 prohibits consideration of settlement terms or negotiations to prove the validity or invalidity of his claims. But Rule 408 does not prohibit introduction of the fact of a settlement that would moot a case regardless of the merits–*the validity or invalidity*–of the underlying claims.  Courts have in fact applied Rule 408 to permit introduction of settlement evidence offered to prove " 'a party's intent with respect to the scope of a release' " and "a 'breach of a settlement agreement, as the purpose of the evidence is to prove the fact of the settlement as opposed to the validity or amount of the underlying claim.' "  *St. Paul Fire and Marine Ins. Co. v. Brother Intern. Corp.*, No. 06-2759 (FLW), 2007 WL 2571960, at *18 (D.N.J. Aug. 31, 2007) (recognizing and distinguishing unnamed cases permitting such introduction).

This Rule 408(b) approach permits the introduction of the existence of a settlement agreement for purposes other than determining the underlying merit of the claims.  Such other purpose was apparently at work in *Morris v. Gaspero*, 522 F. Supp. 121 (E.D. Pa. 1981).  In that case, the district court addressed a motion for summary judgment filed by defendants.  The defendants argued that they were entitled to summary judgment because the plaintiff had entered into a settlement agreement in which he agreed to discontinue the litigation.  *Id.* at 124.  Without even mentioning Rule 408, the district court credited the settlement agreement and granted summary judgment for the defendants, explaining:

> The effect of such an agreement is to extinguish the asserted cause of action and to fix the rights, titles, and interests of the respective parties in accordance with the settlement agreement.
>
> . . .
>
> When plaintiff voluntarily and knowingly entered into the settlement agreement, his original cause of action was extinguished. In the event a party to a settlement agreement breaches the agreement, the other party is not without a remedy, however, since he may seek enforcement of the terms of the agreement. The plaintiff in this action is not seeking enforcement of the terms of the agreement.

*Id.* at 125 (citations omitted). *Morris* is thus instructive because it permitted one party to move for summary judgment based on the effect of a disclosed settlement agreement on the vitality of the litigation, regardless of the validity of the claims at issue in that litigation.

The instant case presents the an analogous scenario in which a party seeks to defeat summary judgment  based on the effect of a disclosed settlement agreement on the vitality of the litigation, regardless of the merits, or validity, of the claims at issue in that litigation.  Under this "other purpose" approach, Defendants can properly introduce that a settlement has been reached.

Although Mottley characterizes Melissa Spillan's Affidavit as self-serving and directs this Court to her apparent lack of truthfulness elsewhere, neither point invalidates her ability to execute an affidavit that this Court must credit.  Weighing credibility is beyond the province of this Court when undertaking a summary judgment analysis.  Thus, the Court is left with Defendants pointing to proper summary judgment evidence that, setting aside the merits of the claims in this litigation, would suggest that the claims themselves are effectively now irrelevant

6

and that the debate would be over the breach of a settlement agreement.[1]

The settlement negotiation material before this Court–the terms of the purported

settlement as described by Melissa Spillan and the numerous negotiation emails presented by

Mottley–does not prove dispositive as Mottley suggests.  He provides a lengthy account of the

settlement negotiations, which he asserts fell apart after October 30, 2007.  The two pieces of

"evidence" upon which Mottley relies, however, are an email from his counsel designated

Exhibit N and an email exchange between counsel designated Exhibit O.  Despite referencing

this material and in fact purportedly quoting from Exhibit N, Mottley has failed to file these

exhibits with the Court.  *See* Fed. R. Civ. P. 56(c) and (e); *see also* S.D. Ohio Civ. R. 7.2(d)

("When proof of facts not already of record is necessary to support or oppose a motion, all

evidence then available shall be discussed in, and submitted no later than, the primary

memorandum of the party relying upon such evidence."); S.D. Ohio Civ. R. 7.2(e) ("Evidence

ordinarily shall be presented, in support of or in opposition to any Motion, using affidavits,

declarations pursuant to 28 U.S.C. § 1746, deposition excerpts, admissions, verified

interrogatory answers, and other documentary exhibits.  Unless already of record, such evidence

shall be attached to the memorandum or included in an appendix thereto . . . .").  The Court can

consider only proper summary judgment evidence and not representations made in the briefing

as to what missing exhibits reportedly say.  *Cf. Soliday v. Miami County, Ohio,* No. C-3-91-153,

---

[1] Of course, Mottley remains free to dispute the existence of a settlement agreement when the finder of fact can believe or disbelieve the testimony of Melissa Spillan.  Should the factfinder disbelieve Spillan, it could then proceed to decide the merits of Mottley's claims. Additionally, depending on the development of the facts, the facts *may* conceivably raise the issue of whether Melissa Spillan submitted an affidavit in bad faith so as to run afoul of Rule 56(g).  The Court of course expresses no opinion on this possibility at this time.

1993 WL 1377511, at \*5 n.4 (S.D. Ohio Nov. 22, 1993) (stating that "the Court cannot consider" deposition testimony referenced in summary judgment reply memorandum but not filed with court); *Moore v. Florida Bank of Commerce*, 654 F. Supp. 38, 41 n.2 (S.D. Ohio 1986) (unauthenticated deposition not filed with court is not proper material under Rule 56); *Podlesnick v. Airborne Express, Inc.*, 550 F. Supp. 906, 910 (S.D. Ohio 1982) (depositions not filed with court but referred to in summary judgment memoranda were not considered in court's decision).

The Court is thus left with proper summary judgment evidence that supports the existence of a settlement on one side and evidence that contests the existence of a settlement on the other side.  This is a genuine issue of material fact that precludes granting summary judgment here on the merits of three of Mottley's four claims, despite the notable and conceded failure of Defendants both to fund the loan pursuant to the agreement and then to return a significant portion of Mottley's stock.  By Defendants' own account of the facts, they concede liability. The only issue is whether damages will flow from a disputed settlement agreement or whether damages will be awarded on Mottley's individual claims.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Mottley's motion for summary judgment. (Doc. # 26.)

**IT IS SO ORDERED**.

     /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
